DECISION AND JUDGMENT ENTRY
{¶ 1} Levi McGrath appeals his conviction in the Meigs County Court of Common Pleas for one count of burglary, one count of receiving stolen property, and one count of theft. McGrath contends that the trial court erred in failing to conduct a competency evaluation and competency hearing in accordance with R.C. 2945.37. Because the record does not reveal a sufficient indicia of incompetence, we find that any error by the trial court in failing to conduct a mandatory hearing was harmless. Therefore, we overrule McGrath's assignments of error, and we affirm the judgment of the trial court.
 I. {¶ 2} The Meigs County Grand Jury indicted McGrath on one count of burglary in violation of R.C. 2911.12(A), one count of receiving stolen property in violation of R.C. 2913.51(A), and one count of theft in violation of R.C. 2913.02(A). McGrath pled not guilty to the charges and the case proceeded to a trial by jury.
 {¶ 3} On the day of trial, the jury pool assembled in the courtroom and the court administered an oath to the jury pool for the purposes of voir dire. Immediately after the court swore in the jury pool, McGrath's counsel requested a bench conference. Counsel related that McGrath was non-responsive, had taken medication that morning, and did not appear competent to stand trial. Counsel requested the court to evaluate McGrath's competency before impaneling a jury.
 {¶ 4} Outside the presence of the jury, McGrath's counsel informed the court that McGrath took some medication prescribed by the Athens Mental Health Center before he came to court that morning. Counsel stated that McGrath was not asking relevant questions or responding appropriately to counsel's questions. In particular, McGrath asked counsel if he could get a new lawyer or if the court would transfer his case to another county.
 {¶ 5} At that point, the court questioned McGrath directly. McGrath's answers demonstrated that McGrath was aware that he was in a courtroom in Meigs County facing burglary charges. McGrath could identify the judge and his attorney and describe their roles. McGrath stated that he took only the pills prescribed for him that morning.
 {¶ 6} A short time later, the court conducted a telephone conference in its chambers. McGrath's treating doctor and the nurse who administered his medication to him that morning each were on the telephone, and McGrath's counsel, McGrath, and counsel for the State were all present. The court reporter transcribed the conference. In response to the court's questions, McGrath's nurse related the medications she gave McGrath that morning and their amounts, including 500 milligrams of Depakote. McGrath's doctor confirmed that he had prescribed the medications in the amounts administered. McGrath's doctor stated that McGrath had been on the exact same medications and dosages in the hospital, and that he observed that McGrath did not exhibit any sedation, delirium, or failure to understand while on those medications. The doctor stated that some of the medications McGrath had taken could have side effects affecting comprehension. However, he did not believe that they could have caused such side effects in McGrath on the day of trial, because McGrath had not exhibited any side effects during his hospital stay. At the conclusion of the telephone conference, the court asked the parties if either wanted the doctor sworn in to affirm that the information he related regarding McGrath was true. Neither party requested that the court swear in the doctor.
 {¶ 7} During a morning break in the trial, the court stated that it had observed McGrath participating in the trial and believed that McGrath understood the proceedings. In particular, the court noted that it had observed McGrath pick up counsel's notepad and begin reading it. McGrath's counsel nonetheless requested that the court draw McGrath's blood to have it analyzed. The court agreed, and McGrath gave a blood sample during the trial's noon recess.
 {¶ 8} The jury convicted McGrath on all counts. The trial court sentenced McGrath accordingly. Three days later, McGrath's counsel filed a laboratory analysis report on the drugs in McGraths' blood on the day of trial. One row of the laboratory report lists "Depakote" in the first column, "[2] H"[1] in the second column, and "50-120" in the final column. McGrath did not file an affidavit or other evidence to explain the meaning of the numbers and letters contained in the report.[2]
 {¶ 9} McGrath appeals his conviction, asserting: "The trial court erred in failing to conduct a competency evaluation and competency hearing in accordance with [R.C.] 2945.37 denying the defendant his due process rights under the United States and Ohio Constitutions."
 II. {¶ 10} McGrath contends that the trial court erred in failing to conduct a competency hearing, and that the court's failure denied him due process of law. McGrath raises three issues for consideration in reviewing his assignment of error: (1) whether the trial court is required to conduct a competency hearing upon request of defense counsel before trial commences; (2) whether defense counsel requested a hearing before McGrath's trial commenced for purposes of R.C. 2945.37(B); and (3) whether the trial court conducted a hearing within the meaning of R.C.2945.37(C)(E). Because we find that we can resolve McGrath's assignment of error without resolving the individual issues presented for review, we decline to address the individual issues.
 {¶ 11} To determine whether a defendant's due process rights were violated by a trial court's failure to hold a competency hearing, we begin with the presumption that all defendants are competent to stand trial. State v. Bomar, Scioto App. No. 00CA2703, 2000-Ohio-1974, citing R.C. 2945.37(G). Pursuant to R.C. 2945.37(B), a trial court must hold a competency hearing if the defendant raises the issue before trial commences. However, "any error by the trial court in not conducting a mandatory hearing under R.C. 2945.37 is harmless if the record fails to reveal sufficient indicia of incompetency." Bomar, supra, citing Statev. Eley (1996), 77 Ohio St.3d 174, 184. See, also Pate v. Robinson
(1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; State v. Bock
(1986), 28 Ohio St.3d 108, paragraph one of the syllabus; State v.Bekesz (1991), 75 Ohio App.3d 436, 441. At least one court has held that we cannot presume that the trial court's failure to hold a mandatory competency hearing was harmless if the record is silent to the defendant's competency. State v. Charlton (Oct. 21, 1992), Lorain App. No. 91CA005272.
 {¶ 12} In Bock, the court defined "incompetence" as "defendant's inability to understand `* * * the nature and objective of the proceedings against him or of presently assisting in his defense.' R.C.2945.37(A)." Bock, 28 Ohio St.3d at 110. The Court noted that a defendant who is emotionally disturbed or even psychotic may still be capable of understanding the charges against him and of assisting in his defense.Id.
 {¶ 13} In this case, we find that the record does not contain sufficient indicia of incompetence to suggest that McGrath was unable to understand the nature of the proceedings against him or assist in his defense. Nor is the record silent as to McGrath's competence. Rather, the record contains evidence affirmatively demonstrating that McGrath was competent to stand trial.
 {¶ 14} In particular, during the trial court's questioning of McGrath, McGrath answered the court's questions appropriately. McGrath indicated that he understood the nature of the charges against him and understood the roles of the judge and defense counsel. McGrath indicated that he would like another attorney because he did not feel that his counsel could adequately represent him, as counsel had only met with McGrath twice in preparation for trial. Subsequently, the court noted that it observed McGrath regularly talking with counsel and reading counsel's notepad during voir dire.
 {¶ 15} Additionally, the court contacted McGrath's doctor and nurse on the telephone in the presence of McGrath, McGrath's counsel, and counsel for the State. Both attorneys had the opportunity to examine the doctor and nurse. McGrath's doctor stated that McGrath had not exhibited any sedation, delirium, or failure to understand while he was under the influence of the medications that the doctor prescribed. The doctor agreed, when questioned by McGrath's counsel, that side effects may occur with the medications, but maintained that he had not observed any side effects in McGrath. After both parties completed their examinations of the doctor and nurse, the court asked if either party would like the witnesses sworn. Both attorneys accepted the testimony as part of the record and did not express any desire for sworn testimony on the issue.
 {¶ 16} The trial court determined, based both upon its own observations of McGrath and upon the statements of McGrath's doctor and nurse, that McGrath understood the nature of the proceedings and was able to assist in his defense.
 {¶ 17} In their briefs to this court, McGrath and the State each argue at length regarding whether the trial court held a hearing. McGrath contends that the unsworn telephone testimony of his doctor and nurse do not constitute evidence, and therefore that the trial court did not conduct a hearing. The State contends that the trial court has discretionary authority to control the scope of a competency hearing as it sees fit. However, regardless of whether the proceedings conducted can be classified as a hearing, we find that the record does not contain sufficient indicia of incompetence to suggest that McGrath did not understand the proceedings or could not assist in his defense. Therefore, even if the trial court was required to conduct a hearing and failed to do so, the court's error was harmless.
 {¶ 18} In sum, we find that the record in this case does not contain sufficient evidence of incompetence to render the court's alleged failure to hold a hearing anything more than harmless error. In fact, the record contains affirmative evidence of McGrath's competence to stand trial. Therefore, we overrule McGrath's sole assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recove r of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of th is Court dire cting the Meigs County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuan t to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment only with Opinion.
[1] We note that this column of laboratory report is nearly illegible; it appears McGrath filed a photocopy of a facsimile of the report.
[2] McGrath contends in his brief that the report shows that his blood levels for Depakote exceeded the limits for medical treatment. However, our examination of the report reveals that no such conclusion is readily discernable from a lay person's perspective. Because the record does not contain any evidence to explain the relevance of the numbers listed in the report, we decline to assign meaning to them.